IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal No. 3:17cr132

KIM LEIGHTON MCBRIDE,
    Petitioner.

## MEMORANDUM OPINION

Kim Leighton McBride, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. ("§ 2255 Motion," ECF No. 62.) McBride contends that he is entitled to relief upon the following grounds:[1]

| | |
|---|---|
| Claim One: | Counsel "refused to develop the record." (*Id.* at 5–9.) |
| Claim Two: | McBride's "plea was not knowing and voluntary" because counsel advised him to plead guilty, which he would not have done if he had known that the Supreme Court would later decide *Rehaif*.[2] (ECF No. 62, at 9–13.) |
| Claim Three: | "Counsel failed to file a Notice of Appeal." (*Id.* at 13–15.) |

The government filed a response in which it argues that McBride's claims are meritless. (ECF No. 69.) McBride has replied. (ECF No. 70.) Because McBride fails to demonstrate that he received ineffective assistance of counsel under the theories presented in Claims One and Two, or that he is otherwise entitled to relief under *Rehaif*, the Court will DISMISS Claims One and Two. For the reasons set forth below, the Clerk will be DIRECTED to appoint counsel to represent

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization, punctuation, and spelling in quotations from the parties' submissions and the record. The Court omits any emphasis or symbols in quotations from McBride's submissions, unless otherwise indicated.

[2] *See Rehaif v. United States*, 139 S. Ct. 2191 (2019).

McBride with respect to Claim Three, and the Court SHALL hold an evidentiary hearing as to that claim.

## I. <u>PROCEDURAL HISTORY</u>

On October 3, 2017, a federal grand jury indicted McBride for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) ("Count One") and possession of an unregistered and unidentified firearm, to wit: a firearm silencer, in violation of 26 U.S.C. §§ 5861 (d) and (i) ("Count Two"). (ECF No. 1, at 1–2.)

On December 15, 2017, McBride, through counsel, filed a motion to suppress evidence obtained from a cell phone found in McBride's possession, (*see* ECF No. 21), and a motion for a *Franks* Hearing,[3] (*see* ECF No. 22). McBride, through counsel, also filed a motion for *Brady*[4] and *Giglio*[5] evidence. ("First *Brady* Motion," ECF No. 26.)

The Court held a motions hearing on February 9, 2018. (ECF No. 28.) At that hearing, the government confirmed that it would not seek to introduce the evidence covered by the motion to suppress. (*See* ECF No. 30, at 1.) The parties also entered a discovery order, in which the government agreed to provide, among other things, *Brady* and *Giglio* material to the defense. (*See* ECF No. 29, at 4–5.) Accordingly, the Court denied McBride's motion to suppress, his motion for a *Franks* Hearing, and the First *Brady* Motion as moot. (ECF No. 30, at 1.) The Court granted McBride leave to seek additional exculpatory or impeachment evidence should the need arise. (*Id.*)

The Court set the case for a jury trial on March 15, 2018. (ECF No. 28, at 1.) On March

---

[3] *See Franks v. Delaware*, 438 U.S. 154 (1978).

[4] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[5] *See Giglio v. United States*, 405 U.S. 150 (1972).

2

9, 2018, however, McBride, through counsel, filed another motion for a hearing regarding the government's *Giglio* and *Brady* obligations. ("Second *Brady* Motion," ECF No. 33.) Three days later, on March 12, 2018, McBride, through counsel, filed a supplement to the Second *Brady* Motion. ("Third *Brady* Motion," ECF No. 34.) The Court continued the jury trial generally and set a motions hearing for March 16, 2018. (ECF No. 36, at 1.)

At the March 16 hearing, the Court denied the Second and Third *Brady* Motions. (*See* ECF No. 41, at 1.) The Court explained that:

> McBride asks the Court to make a finding that two officers involved in investigating this case lied in order to get a search warrant. The defendant also asks the Court to require the government to produce a written statement that the officers lied. McBride colors the motions as relief for *Brady* violations, but does not cite any caselaw in which a court has required the government to produce a written admission that an officer has lied. At the hearing, the parties made it clear that the government has turned over exculpatory impeachment evidence that McBride can use to impeach the officers at trial. The defendant provides no authority supporting the next step of his requested relief–that the Court make the ultimate finding on the officers' credibility or that the Court order the government to admit that the officers lied. For these reasons, the Court DENIES the motions.

(*Id.*) Despite denying the Second and Third *Brady* Motions, the Court nevertheless made several evidentiary rulings favoring McBride. (*Id.* at 1–2.) Among other things, the Court prohibited the government from mentioning the content of certain messages from McBride's cell phone, unless he "open[ed] the door." (*Id.* at 2.) The Court also ruled that McBride could use extrinsic evidence to attempt to impeach the officers in question, should they testify. (*Id.* at 1.) The Court reset the jury trial for April 19, 2018. (ECF No. 39, at 1.)

On April 9, 2018, McBride informed the Court of his intent to plead guilty. (ECF Nos. 42, 43, 44.) Pursuant to his written plea agreement and stipulation of facts, McBride stipulated that had the matter gone to trial, the government would have proven the following facts, which he admitted were "true and correct," beyond a reasonable doubt:

3

On or about January 25, 2017, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, KIM L. MCBRIDE, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a firearm and ammunition, to wit: a Ruger semiautomatic pistol, model 22/45 MKIII, .22 caliber Long Rifle, serial number 274-96012, and ammunition, all in and affecting interstate commerce.

On or about January 25, 2017, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, KIM L. MCBRIDE, did knowingly receive and possess a firearm, to wit: a firearm silencer, not registered to him in the National Firearms Registration and Transfer Record, and that was not identified by a serial number as required by chapter 53 of Title 26.

On the evening of January 25, 2017, Officer Johnson of the Richmond Police Department observed a blue minivan traveling at a higher rate of speed than other vehicles on the road. Based upon observed traffic infractions, the officer attempted to initiate a traffic stop. The driver of the minivan, later identified as MCBRIDE, continued to drive and failed to yield.

MCBRIDE continued to drive until he reached the dead[-]end portion of Guilder Lane. MCBRIDE then exited the car and fled on foot.

As MCBRIDE ran, he held his waistband with his left hand and held something in his right hand that was a long cylindrical object. As MCBRIDE turned a corner, he tossed the metal object into a dumpster and continued to run. After tossing a second item, MCBRIDE gave up and got on the ground where he was taken into custody by Richmond Police Department.

Additional officers arrived and an air unit ("AIR 3") responded to the scene. AIR 3 used thermal imaging to guide officers to the hot spots where MCBRIDE discarded a silencer and a .22 caliber handgun. Both items were recovered. The silencer was an exact fit to the handgun recovered.

The firearm and ammunition that MCBRIDE possessed traveled in interstate and/or foreign commerce in that both were manufactured outside of the Commonwealth of Virginia. In addition, the firearm MCBRIDE possessed is a firearm within the meaning of 18 U.S.C. § 921(a)(3), in that it was designed to expel a projectile by action of an explosive.

The firearm silencer that MCBRIDE possessed was not registered to him in the National Firearms Registration and Transfer record and was not identified by a serial number as required by Chapter 53 of Title 26. At all relevant times, the firearm silencer was a "firearm" within the meaning of 26 U.S.C. § 5845(a).

Prior to January 25, 2017, MCBRIDE had been convicted of a crime punishable by a term of incarceration exceeding one year, that is, he was convicted of a felony, and as such was prohibited from possessing firearms or ammunition.

This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

(ECF No. 44, at 1–3 (paragraph numbers omitted).) At the end of the statement of facts, McBride signed and dated the document with the following verification:

> After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, KIM L. MCBRIDE, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

(*Id.* at 3.)

McBride's plea agreement contained, *inter alia*, the following clauses:

> The defendant agrees to plead guilty to Count Two of the indictment. . . . The maximum penalties for the offense are a term of imprisonment for ten years, a $10,000 fine, a special assessment, forfeiture of assets as outlined below, and three years of supervised release. . . .
> The defendant will plead guilty because the defendant is in fact guilty of the charged offense. The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt. . . .
> The defendant is satisfied that the defendant's attorney has rendered effective assistance. The defendant understands that by entering into this agreement, defendant surrenders certain rights as provided in this agreement. The defendant understands the rights of criminal defendants include the following:
>     a.    the right to plead not guilty and to persist in that plea;
>     b.    the right to a jury trial;
>     c.    the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings; and
>     d.    the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.
> The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above but that the Court will determine the defendant's actual sentence in accordance with 18 U.S.C. § 3553(a). The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range . . . the defendant may have received . . . is a prediction, not a promise, and is not binding on . . . the Court. Additionally, . . . the Court . . . may impose a sentence above or below the advisory sentencing range, subject only to review by higher courts for reasonableness. The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence.

5

> Further, . . . the United States and the defendant agree to recommend that a term of imprisonment for ten years constitutes the appropriate sentence. The defendant understands and acknowledges that this recommendation is not binding on the Court.
>   The defendant also understands that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence equal to or less than the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatsoever other than an ineffective assistance of counsel claim that is cognizable on direct appeal, in exchange for the concessions made by the United States . . . .
>   . . . .
>   Upon execution of this agreement and the Court's acceptance of the defendant's plea of guilty, the United States will move to dismiss the remaining count of the indictment against this defendant.
>   . . . .
>   This written agreement constitutes the complete agreement between the United States, the defendant, and the defendant's counsel. The defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth writing in this plea agreement, to cause the defendant to plead guilty. . . .

(ECF No. 43, at 1–8 (paragraph numbers and section headings omitted).) At the end of the plea agreement, McBride signed and dated the document with the following verification:

> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal indictment. Further, I fully understand all rights with respect to Title 18, United States Code, Section 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

(*Id.* at 9.)

During the plea hearing, the Court placed McBride under oath, and McBride acknowledged that he was subject to prosecution for perjury if he testified falsely. (ECF No. 69-1, at 4–5.) McBride pleaded guilty to Count Two. (*Id.* at 24.) The Court found that McBride's plea was knowing, voluntary, and supported by an independent basis in fact. (*Id.*) Accordingly, the Court accepted McBride's guilty plea and found him guilty of Count Two. (*Id.*)

Following McBride's plea hearing, a probation officer created a Presentence Investigation

6

Report. ("PSR," ECF No. 49.) McBride received a Total Offense Level of 24 and a Criminal History Category of V, resulting in an advisory guidelines range of 92 months to 115 months of imprisonment. (*Id.* ¶¶ 68–69.)

Prior to sentencing, the government filed a motion for an upward variance. (ECF No. 51.) Among other things, the government cited to McBride's extensive criminal history. (*Id.* at 3–5.) Both parties also filed position papers requesting that the Court follow the recommendation for ten years of incarceration contained in the plea agreement. (ECF Nos. 52, 53.) In addition, McBride submitted several letters written on his behalf by his former parole officer and various members of his family. (*See* ECF Nos. 53-1, 54, 55, 56.) McBride also wrote a letter to the Court, in which he stated:

> The reason for this letter is two-fold[.] (1) This letter is my attempt to speak directly to this honorable Court about my history, thought process, values, and perceptions when this crime was committed. Also (2) [t]his letter is an attempt to open up . . . [a] dialogue o[n] alternative sentencing . . . .
> I am a lifelong resident of Petersburg with exception of my birth at Ft. Lee and my post conviction release residing in Richmond. My life in Petersburg was hard. I grew up in a constant state of want. My mother did all that she could do for me. My father died when I was young. I grew up with the ideas of accomplishing my dreams and goals but I never knew how to go about [it]. In my neighborhood, the option of the streets was a constant. The streets provided financial opportunities. It was easier to get employed through the drug trade than through the few jobs around my neighborhood.
> All of my life I've known hard times and hard times influenced many of my decisions as a youth. I've always sought to escape from the insecurity of want and the desperation of need. Insecurity caused a foolish decision and that decision robbed me of my youth.
> . . . [T]he instant offense before this Court was produced because of fear, desperation and need, the trinity which haunted my youth. On that day, I found the silencer which was hidden behind crumbled money in the bushes. Naturally, when I saw the money my attention was piqued. I went to get the money and tucked immediately behind it and a bit further in the bushes was the silencer.
> I knew what I had when I discovered the silencer. Since my release, life was good for me because I was free. I struggled with the usual problems associated with re-entry, housing and job insecurity, flashbacks and memories of the horrors that I had witnessed while in prison. However, I was excited about my new life. I obeyed the law. On the day in question, I was going through a financially difficult

> period of time. I had recently lost my job and I was late on my portion of rent. So, when I saw the money (which only turned out to be a lousy $12) and silencer, I saw the potential to satisfy my need in the silencer, as I knew that the silencer could be sold for a nice profit.
>
> I solicited several responsible gunowners at the time and no one was interested. I received offers to sell from nefarious individuals but I refused to sell. I would rather hold it and sell it to the right person than the wrong person.
>
> Your Honor, I was in need of cash. I never wanted to commit a crime. I just needed money and I did not know that the silencer was as troublesome as it has proven to be.
>
> . . . I learned from 20 years of incarceration that it's impossible to stay alive in a prison environment for 20 years and not learn lessons and knowledge of self. With all that I learned my need and desperation to secure shelter caused me to make a bad mistake. In my file, which is before you[,] none of my lessons will be documented. Very few of my words will be used to testify about the mind state that I was in when this crime occurred. To the contrary, much of what will be said about [me] will be in reference to a crime that I paid for and that occurred 20 plus years ago. I'm not that same individual anymore. I've grown as a man, as a human. My value scale is much higher.
>
> . . . I am requesting that your Honor consider incarceration as only a portion of my sentence. I believe that alternative sentencing would greatly benefit me. I believe that with my age and experiences the alternatives to incarceration would greatly benefit me. The motivation behind this crime was financial. I am a grandfather now. I am not the impulsive twenty-two-year-old that committed a foolish crime so many years ago. But for that crime, I would not be in your honorable Court now.
>
> Alternative sentencing is a much more just and productive sentencing option. It permits the Court the flexibility to issue a judgment reflective of the particular case and defendant's station in life and background. I am a great candidate your Honor. I am 47 years old and I have given my time and life for a crime. I was on my path towards redemption. I missed so much of my children's life, but I have been given another chance with my granddaughter.
>
> . . . [H]ouse arrest, extended halfway house, and electronic monitoring all are possible alternatives in sentencing. I respectfully request that you consider all of these and others as alternatives for a portion of the sentence. Thank you, your Honor for your consideration.

(ECF No. 57, at 4–8.)

On July 12, 2018, McBride appeared before the Court for sentencing. (*Id.* at 1.) Neither party objected to the PSR. (*Id.*) Pursuant to the plea agreement, the Court sentenced McBride to 120 months of incarceration. (*See* ECF No. 58, at 2.) On the government's motion, the Court dismissed Count One. (*Id.* at 1.)

8

McBride did not file a notice of appeal. The current § 2255 Motion followed.

## II. <ins>INEFFECTIVE ASSISTANCE OF COUNSEL</ins>

McBride asserts that his trial counsel was ineffective in a variety of ways. To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, "that counsel's representation was deficient," and second, "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy *Strickland*, a defendant must overcome the "'strong presumption' that counsel's strategy and tactics f[e]ll 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, a court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court has modified the second prong of *Strickland* to require a defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "This is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (citations omitted). Mere assertions by the movant that he would not have pleaded guilty if he had received different advice from counsel are not dispositive. *Cf. United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, a court must look to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction

9

and any possible sentencing benefit to pleading guilty. *See Meyer*, 506 F.3d at 369–70.

In conducting the foregoing inquiry, "the representations of the defendant, his lawyer, and the prosecutor" during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier to any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Because of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are [almost] always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22.

### III. ANALYSIS

#### *A. Claim One*

In Claim One, McBride asserts that counsel "refused to develop the record" with respect to perceived violations of his Fourth Amendment rights.[6] (ECF No. 62, at 5, 8.) Specifically, McBride alleges that he asked counsel to take Officer Johnson's pretrial deposition to "resolve issues that went to the heart of the case" and that counsel "adamantly refused." (ECF No. 62-1, at 2.) Claim One fails for several reasons.

---

[6] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

As an initial matter, McBride testified at his plea hearing that he was satisfied with his counsel's service to him. (ECF No. 69-1, at 8–9.) McBride further testified that counsel did not refuse to do, or otherwise fail to do, anything that he had asked of her. (*Id.* at 9.) McBride's current allegation that counsel "adamantly refused" to act on his request that she take Officer Johnson's deposition directly contradicts these prior sworn statements.

McBride has failed to show that any extraordinary circumstances exist that would require the Court to consider his sworn statements at the plea hearing to be anything other than truthful. *Lemaster*, 403 F.3d at 221–22.[7] Accordingly, McBride remains bound by his prior testimony, which is conclusively established. *Lemaster*, 403 F.3d at 221–22. McBride's self-serving and conclusory allegations to the contrary are "palpably incredible," "patently frivolous or false," and cannot form the basis for a successful collateral attack under § 2255. *Id.* at 221. For this reason alone, Claim One must be dismissed. *Id.* at 221–22.

Further, the Court notes that "depositions in criminal proceedings, unlike their civil counterparts, are the exception not the rule; they are in other words, disfavored." *United States v. Ordonez*, 242 F. Supp. 3d 466, 471 (E.D. Va. 2017) (citation omitted). The Federal Rules authorize their use only in "exceptional" circumstances, which McBride has failed to demonstrate here. Fed. R. Crim. P. 15(a)(1). Thus, even if counsel did "adamantly refuse" to attempt to take Officer Johnson's pretrial deposition, McBride has nevertheless failed to show how this was an error.

Finally, the Court finds that counsel diligently investigated and aggressively challenged

---

[7] McBride attempts to wriggle out from the rule of *Lemaster* by claiming that he did not learn of counsel's alleged deficiencies until after his sentencing. (ECF No. 70, at 2.) Setting aside for a moment the fact that this claim is both vague and conclusory, *see Sanders v. United States*, 373 U.S. 1, 19 (1963), the notion that McBride did not know about the issues he complains of in Claim One before his plea defies credulity. The parties briefed the issue of pretrial depositions before McBride pleaded guilty. (*See* ECF No. 37, at 6–8; *see also* ECF No. 38, at 8.) Further, as discussed herein, trial counsel aggressively protected McBride's Fourth Amendment rights prior to McBride's plea. Consequently, the rule of *Lemaster* applies in this instance.

the government's version of events throughout these proceedings. Counsel filed a motion to suppress evidence recovered from McBride's cell phone, (*see* ECF No. 21), and a motion for a *Franks* hearing regarding the officers' conduct in obtaining search warrants, (*see* ECF No. 22). Counsel also filed the First *Brady* Motion, (ECF No. 26), to obtain exculpatory and impeachment evidence related to the government's witnesses. While the Court ultimately denied these requests as moot, (*see* ECF No. 30, at 1), it was not because counsel was deficient in anyway. To the contrary, counsel convinced the government to provide her with exculpatory and impeachment evidence related to its witnesses and not to use the material obtained from McBride's phone without requiring the Court to decide those issues. (*See id.*)

Even after securing the government's concession that it would not use materials obtained from McBride's cell phone at trial, counsel continued to pepper the government with the Second and Third *Brady* Motions, in an effort to improve McBride's chances at trial. (ECF Nos. 33, 34.) As a result of counsel's dogged advocacy, the Court postponed McBride's jury trial and scheduled a special motions hearing. (*See* ECF No. 36, at 1.)

While the Court ultimately denied the Second and Third *Brady* Motions, the Court did not base its decision on counsel's lack of preparedness or zeal. Counsel went beyond simply securing the *Brady* and *Giglio* material that she was entitled to, insisted that the government admit in writing that its officers were lying, and requested that the Court usurp the jury's fact-finding duty and conclude, as a matter of law, that the officer(s) had credibility issues. (*See* ECF No. 41, at 1.) Counsel's position in this regard was by no means dilatory or timid. Rather, counsel's requests were so aggressive that the Court could find no basis in the law for granting the relief she sought. (*Id.*)

Nevertheless, counsel succeeded in securing important materials from the government that

she could use to cross-examine the officers in question and obtaining favorable evidentiary rulings prior to trial. (*Id.*) In doing so, counsel undeniably strengthened her hand for the plea negotiations that followed, as reflected by the fact that she was able to approach the government and secure a plea agreement on terms that were favorable to McBride.

Because McBride has failed to show that counsel was deficient, much less that he was prejudiced in any way, Claim One lacks merit and will be DISMISSED.

### B. *Claim Two*

In Claim Two, McBride alleges that his "plea was not knowing and voluntary" because counsel advised him to plead guilty, which he would not have done if he would have known that the Supreme Court would later decide *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (*See* ECF No. 62, at 9–13.) It is unclear whether McBride intends for Claim Two to be construed as an ineffective assistance of counsel claim or a stand-alone *Rehaif* claim. As explained below, however, McBride is not entitled to relief under either theory.

Under 18 U.S.C. § 922(g)(1), it is unlawful for a person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. A separate provision, 18 U.S.C. § 924(a)(2), states that anyone who "knowingly violates" § 922(g) shall be fined or imprisoned for up to ten years. In *Rehaif*, the Supreme Court determined that § 922(g) does not criminalize a defendant's "innocent mistake" and therefore, a conviction under § 922(g) requires "knowledge of [the] status" that renders firearm possession unlawful. 139 S. Ct. at 2197. Thus, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the [g]overnment must prove both that the defendant knew he possessed a firearm *and that he knew* he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200 (emphasis added).[8]

---

[8] In *Rehaif*, the defendant was convicted of being an alien unlawfully in the United States in possession of a firearm. *Id.* at 2194. At trial, Rehaif objected to the jury instruction "that the

To the extent McBride intends Claim Two to be construed as a stand-alone *Rehaif* claim, the Court notes that McBride did not raise his claim during his criminal proceedings in this Court or on direct review. The government correctly asserts that, absent a showing of cause and prejudice or actual innocence, Claim Two is barred from review here because McBride could have raised, but did not raise, his claim on direct appeal. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). The Court need not determine whether McBride has shown cause, because he clearly suffered no actual prejudice. *See United States v. Frady*, 456 U.S. 152, 167–68 (1982).

To demonstrate prejudice, McBride must show "a 'reasonable probability' that the outcome of the district court proceeding would have been different." *Greer v. United States*, 141 S. Ct. 2090, 2100 (2021). Thus, McBride must demonstrate that he was prejudiced by the omission of the knowledge-of-status element from the indictment. *See, e.g., United States v. Lara*, 970 F.3d 68, 87–88 (1st Cir. 2020) (holding omission of *Rehaif* mens rea requirement from indictment was not plain error where evidence was overwhelming), *cert. denied sub nom. Williams v. United States*, 141 S. Ct. 2821 (2021); *United States v. Raymore*, 965 F.3d 475, 486 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2814 (2021) (same).

As the Court explained in *Rehaif*, however, the government's duty to prove a defendant's knowledge of his status is hardly "burdensome," because "knowledge [of status] can [often] be inferred from circumstantial evidence." 139 S. Ct. at 2198 (quoting *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)). Indeed, "[d]emonstrating prejudice under *Rehaif* will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted

---

'United States is not required to prove' that Rehaif 'knew he was illegally or unlawfully in the United States,'" at the time he possessed the firearm. *Id.* (citation omitted). The district court overruled the objection, and the jury convicted Rehaif. *Id.* The Court of Appeals affirmed the conviction. *Id.* at 2195. But the Supreme Court reversed, holding that the evidence "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." *Id.* at 2194.

felons. And they know the [g]overnment would have little trouble proving that they knew." *United States v. Lavalais*, 960 F.3d 180, 184 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2807 (2021).

In this instance, the undisputed evidence overwhelmingly establishes that the government could have easily demonstrated that McBride knew of his prohibited status at the time of the offense, had McBride insisted on going to trial. Prior to the present offense, McBride was convicted of multiple felonies on multiple occasions for which he received sentences in excess of one year. (*See* ECF No. 69-5.) Of note, following a jury trial in the Circuit Court for Dinwiddie County, Virginia, McBride was convicted of four counts of attempted murder, four counts of use of a firearm in the commission of a felony, possession of a firearm by a convicted felon, and shooting into an occupied vehicle, for which he received an aggregate sentence of thirty years of incarceration. (*Id.* at 7–15.) In another case, after a bench trial in the Circuit Court for the City of Petersburg, Virginia, McBride was convicted of possession of cocaine with the intent to distribute, after previously having been convicted of a similar offense, for which he received an eight-year sentence. (*Id.* at 1–6.)

Moreover, McBride's letter to the Court establishes that he knew he had been convicted of crimes punishable by imprisonment for a term exceeding one year. (*See* ECF No. 57, at 4–8 (discussing, *inter alia*, the lessons that McBride "learned from 20 years of incarceration" and the things it takes to "stay alive in a prison environment for 20 years").) Finally, the government possessed evidence that McBride knew he was explicitly prohibited from possessing a firearm on the date in question, (*see* ECF No. 69-4, at 2 (attaching a "Zero Tolerance Policy" probation document, dated September 25, 2013, and signed by McBride, in which he states that he "thoroughly understand[s] that [he] cannot purchase, carry, own, or possess a firearm or ammunition")), even though *Rehaif* imposes no such requirement. *See United States v. Singh*, 979

15

F.3d 697, 727 (9th Cir. 2020) (finding that *Rehaif* does not require the government to "also prove the defendant knew his or her status prohibited firearm ownership or possession").

Given the foregoing facts, McBride fails to demonstrate any reasonable probability of a different result (except, perhaps, a longer term of incarceration) if the government had been required to allege McBride's knowledge-of-status in the indictment or prove that fact at trial. The same information also dispels any suggestion that McBride's actual innocence could excuse his default. Consequently, Claim Two is procedurally barred and must be dismissed to the extent it could be construed as a stand-alone *Rehaif* claim.[9]

To the extent McBride intends Claim Two to be construed as an ineffective assistance of counsel claim, it likewise fails. McBride pleaded guilty on April 9, 2018, (*see* ECF No. 42), over nine months before a writ of certiorari was granted in *Rehaif*. *See United States v. Rehaif*, 888 F.3d 1138 (11th Cir. 2018), *cert. granted*, 139 S. Ct. 914 (U.S. Jan. 11, 2019). The Supreme Court did not issue its opinion until June 21, 2019, over a year after McBride entered his plea. 139 S. Ct. at 2191. Thus, there was no reason for counsel to discuss *Rehaif* with McBride prior to his plea – the case had not been decided yet. Moreover, McBride concedes that counsel's advice that he "should not go to trial" on Count One, (*see* ECF No. 62, at 10), because "all the government basically had to prove was [that he] was a convicted felon[] and [that he] possessed a firearm," (*see* ECF No. 62-1, at 4), was "at the time arguably the correct advice," (*see* ECF No. 62, at 10).

---

[9] Even if Claim Two were not procedurally barred, the Court finds that McBride's claim for relief would still fail. It has long been held that "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United States*, 397 U.S. 742, 757 (1970) (affirming guilty plea despite subsequent change in law). Indeed, "[t]he fact that [McBride] did not anticipate [*Rehaif*] does not impugn the truth or reliability of his plea," nor does it permit him "to disown his solemn admissions in open court that he committed the act with which he [was] charged." *Id.* The Court need not consider this issue further because Claim Two is barred from review.

16

McBride's argument appears to reflect his implicit belief that counsel should have anticipated that the Supreme Court might eventually decide *Rehaif* and change the law. But "an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient" conduct. *United States v. Dyess*, 730 F.3d 354, 363 (4th Cir. 2013) (quoting *United States v. McNamara*, 74 F.3d 514, 516 (4th Cir. 1996)). Given this precedent and his concession that counsel's advice to him at the time of his guilty plea was arguably correct, McBride has failed to show that counsel was deficient for failing to anticipate *Rehaif* or for recommending that he plead guilty.[10]

Accordingly, Claim Two lacks merit and will be DISMISSED.

### *C. Claim Three*

In Claim Three, McBride asserts that counsel was ineffective because she failed to file a notice of appeal after he instructed her to do so. (ECF No. 62, at 13–15.) In subsequent sworn statements, however, McBride changes course and argues that counsel erred because she did not consult with him at all about filing an appeal. (ECF No. 70, at 7–10.)

"[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007). Accordingly, an attorney's failure to file an appeal when specifically instructed to do so is *per se* ineffective assistance of counsel. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483–86 (2000). The fact that a defendant may have waived certain appeal rights as part of a plea bargain does not alter this conclusion. *See Garza v. Idaho*, 139 S. Ct. 738, 749–50 (2019) (citing *Flores-Ortega*, 528 U.S. at 484).

---

[10] Even if the Court were to assume, *arguendo*, that McBride could establish that counsel was deficient in this regard, which he has not, McBride has also failed to establish that he suffered any prejudice. As discussed above, had the case gone to trial, the government could have very easily demonstrated that McBride knew of his prohibited status.

17

In his § 2255 Motion, McBride avers that trial counsel failed to file an appeal after he instructed her to do so. (*See* ECF No. 62, at 14.) Specifically, McBride alleges:

> [O]n the same date of sentencing [counsel] was instructed by me to file a notice of appeal based primarily on my being sentenced above the sentencing guidelines. I repeated it twice to counsel Vidal because the first time I told her she acted as if she did not hear me. The second time I told her to file the notice of appeal, counsel Vidal . . . replied, "It will be for nothing because you waived your right to appeal. But, I will file it."

("First McBride Declaration," ECF No. 62-1, at 3–4.)

By Memorandum Order entered on November 5, 2019, the Court directed that counsel submit an affidavit in response to McBride's allegations. (ECF No. 68.) In her affidavit, counsel swears, *inter alia*, that "McBride did not instruct [her] to file a notice of appeal." ("Vidal Affidavit," ECF No. 69-3, at 6.)

In his reply, McBride presents the distinct and distinguishable claim that *counsel failed to consult with him about whether an appeal should be filed*. (*See id.* at 8 (emphasis added).) Indeed, McBride appears to concede that he did not instruct trial counsel to file an appeal on his behalf. (*See id.* at 9 (noting that "[t]he defendant in *Garza* – unlike the Petitioner – explicitly instructed his attorney to appeal . . . .") (emphasis added).)

The United States Court of Appeals for the Fourth Circuit has instructed that "when a defendant brings a § 2255 claim based on his attorney's failure to file a requested notice of appeal, the district court should hold a hearing if it is unclear in the record whether the attorney was so instructed." *Poindexter*, 492 F.3d at 272. Considering McBride's inconsistent statements, the Court has doubts as to whether McBride intends to assert such a claim.[11] Nevertheless, the Court

---

[11] The Court notes that the Supreme Court has rejected a bright-line requirement that all attorneys must consult with all criminal defendants regarding an appeal after every conviction. *Flores-Ortega*, 528 U.S. at 478–80. Accordingly, to resolve McBride's claim that counsel failed to consult with him regarding an appeal, the Court must analyze the "information counsel knew or should have known" immediately following McBride's sentencing to determine whether McBride

18

will resolve those doubts in McBride's favor, appoint counsel for McBride as to Claim Three, and hold an evidentiary hearing as to that claim.

## IV. CONCLUSION

For the foregoing reasons, Claims One and Two shall be DISMISSED. (ECF No. 62.) The Clerk will be DIRECTED to appoint counsel to represent McBride with respect to Claim Three, and the Court SHALL hold an evidentiary hearing as to that claim only.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 27 July 2022
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

has demonstrated that counsel acted unreasonably in this instance. *See id*. at 479–80 (citation omitted). Because the Court will hold an evidentiary hearing as to Claim Three, it will reserve its analysis of the merits of this aspect of Claim Three until after the hearing.

19